| | |
|---|---|
| **D.W., by and through his Next Friend,** ) | |
| **Hosanna McConnell and HOSANNA** ) | |
| **McCONNELL, individually,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:05CV1812MLM** |
| ) | |
| **McNEIL-PPC, INC., WALGREEN CO.** ) | |
| **ST. LOUIS CHILDREN'S HOSPITAL,** ) | |
| **and WASHINGTON UNIVERSITY** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER OF REMAND

This matter is before the court pursuant to the Motion to Remand filed by Plaintiffs D.W., by and through his Next Friend, Hosanna McConnell, et. al, ("Plaintiffs"). Doc. 16. Defendant McNeil-PPC, Inc., has filed a Memorandum in Opposition to Plaintiffs' Motion to Remand. Docs. 22. Defendant Washington University, Defendant Walgreen Co., and Defendant Children's Hospital have joined Defendant McNeil-PPC's Memorandum. Docs. 19, 20, 21. Also before the court is the Motion to Dismiss Counts II, VI and VIII filed by Defendant Walgreen Co. Doc. 11. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Doc. 18.

## BACKGROUND

1.       Plaintiffs filed a Complaint in State court on August 16, 2005, alleging that Plaintiffs D.W., a minor under the age of fourteen, and his Next Friend and Natural Mother, Hosanna McConnell, are residents of the City of St. Louis, Missouri; that Defendant McNeil-PPC, ("McNeil") a corporation organized and incorporated in New Jersey, engaged in the business of manufacturing and selling over-the counter medication called Children's Tylenol; that Defendant Walgreen Co. ("Walgreen")  an

PDF created with FinePrint pdfFactory trial version [www.pdffactory.com](www.pdffactory.com)

Illinois corporation, is engaged in the business of selling Defendant McNeil's Children's Tylenol; that Defendant Children's Hospital ("Children's Hospital"), a Missouri corporation, with its principal place of business in the City of St. Louis, Missouri, at all pertinent times held itself out as a professional health care provider; and that Defendant Washington University ("Washington University"), a Missouri corporation with its principal place of business in the City of St. Louis, Missouri, at all pertinent times, held itself out as a professional health care provider. Compl., ¶¶ 1-5.

2.	Plaintiffs generally allege that during the month of February 2001 D.W. ingested quantities of Children's Tylenol and that as a direct and proximate result he suffered acetaminophen toxicity, thereby causing the need for a liver transplant.

3.	Plaintiff's further allege as follows: Counts I and II, strict liability against McNeil and Walgreen, respectively, in regard to the sale, manufacture, and distribution of Children's Tylenol; Counts III and IV, negligence against McNeil and Walgreen, respectively, in regard to the sale, manufacture, and distribution of Children's Tylenol; Counts V and VI, strict liability against McNeil and Walgreen, respectively, seeking medical expenses incurred by McConnell; Counts VII and VIII, negligence against McNeil and Walgreen, respectively, seeking medical expenses incurred by McConnell; Counts IX and X, medical malpractice against Children's Hospital and Washington University, respectively; and Counts XI and XII, recovery of medical expenses incurred by McConnell from McNeil and Walgreen, respectively,.

4.	In regard to their medical malpractice claims against Children's Hospital and Washington University Plaintiffs allege that on February 23, 2001, at the age of two years, D.W. presented to Children's Hospital emergency room after ingesting quantities of Children's Tylenol and that these Defendants failed to assess D.W. in a timely manner by failing to ask his father specific questions

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

about D.W.'s Tylenol ingestion, including the times and amounts ingested, by failing to assess the color of the sclera of D.W.'s eyes, by failing to timely obtain toxicology results, by failing to order serum toxicology acetaminophen levels, by failing to timely perform the ordered acetaminophen laboratory level tests, by failing to timely administer and prescribe the recommended dosage of Mucomyst to counter the affects of Tylenol after learning that D.W. had been given Tylenol; by nursing staff's failing to timely carry out a physicians's order to administer Mucomyst; and by failing to treat D.W.'s elevated acetaminophen levels by prescribing and administering Mucomyst.

5.     Plaintiffs allege in each count of their Complaint that as a proximate result of each named Defendant's conduct that Plaintiff suffered among other symptoms hepatotoxicity, fulminant hepatic failure, and the ultimate need for a liver transplant.  Plaintiffs further allege in regard to each count of their Complaint that as a result of each named Defendant's conduct D.W. was required to undergo extensive medical, surgical, hospital, therapeutic, rehabilitative, and nursing care and treatment and that McConnell became indebted for D.W.'s medical care and treatment.

6.     McNeil removed this matter pursuant to 28 U.S.C. § 1441 and asserted that this action originally could have been filed in this court pursuant to 28 U.S.C. § 1332.  In support of the Notice of Removal McNeil asserted that this court has subject matter jurisdiction because there is the requisite diversity of citizenship between Plaintiff and all properly named Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. McNeil further argued that Children's Hospital and Washington University were fraudulently joined.

7.     In their Motion to Remand Plaintiffs contend that Children's Hospital and Washington University (jointly, "the Hospital Defendants") were not fraudulently joined; that Plaintiffs' Complaint clearly and specifically alleged causes of action against the Hospital Defendants for medical

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

malpractice; that the Hospital Defendants are both Missouri citizens; and that, therefore, this court does not have diversity jurisdiction.

8.        In support of their contention that the Hospital Defendants are fraudulently joined Defendants argue that Plaintiffs have gone to great lengths to avoid litigating their claims in the United States District Court for the Eastern District of Missouri as they initially filed their cause of action against McNeil and Walgreen in Madison County, Illinois, as they did not assert claims against the Hospital Defendants in the Madison County matter, as they did not file a separate lawsuit against the Hospital Defendants in Missouri, and as only after the Madison County matter was dismissed based on forum non conveniens did Plaintiffs join the Hospital Defendants.  McNeil further argues that Plaintiffs' claims against the Hospital Defendants lack a reasonable basis and that the Hospital Defendants are named only to avoid diversity jurisdiction.

## STATUTORY FRAMEWORK

1.        28 U.S.C. § 1332(a) provides that "district courts shall have original jurisdiction of all civil actions when a matter in controversy...is between (1) citizens of different states."  The party seeking the federal forum has the burden of pleading diversity of citizenship of the parties, Walker v. Norwest Corp., 108 F.3d 158, 161 (8th Cir. 1997), and the burden of establishing diversity jurisdiction by a preponderance of the evidence.  Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992); Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990); Russell v. New Amsterdam Cas. Co., 325 F.2d 996, 997 (8th Cir. 1964).

2.        The court in Iowa Pub. Serv. Co. v. Med. Bow Coal, Co., held in regard to diversity where there are multiple plaintiffs and/or defendants:

[I]n a case where there are plural plaintiffs and plural defendants a federal court does

4

not have diversity jurisdiction unless there is diversity between all plaintiffs and all defendants. ... [I]f the "nondiverse" plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction.

556 F.2d 400, 403-404 (8th Cir. 1977) (internal citations omitted).

3.     28 U.S.C. § 1441 sets forth the grounds for removal from state court to federal court. Section 1441(a) provides, in pertinent part, that "any civil action brought in State court of which [federal district courts] have original jurisdiction, may be removed by the defendant" to federal district court.

4.     28 U.S.C. § 1446 sets forth the procedure for removal.  Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

5.     28 U.S.C. § 1447(c) provides, in pertinent part, that: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

6.     The Eighth Circuit holds that fraudulent joinder of a non-diverse party does not prevent removal.  Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983). See also BP Chemicals Ltd. v. Jiangsu Sopo Corp, 285 F.3d 677, 685 (8th Cir. 2002) (holding that a defendant's right of removal

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

based on diversity of citizenship may not be defeated by fraudulently joining a non-diverse party).

The Eighth Circuit further holds that "'[j]oinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law'" to support a claim against the defendant whose joinder would preclude removal.  Id. (quoting Wiles v. Capitol Indem, Corp., 280 F.3d 868, 871 (8th Cir. 2002)).

"Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent." Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003).  The Eighth Circuit articulated in Filla regarding ambiguities relevant to whether joinder is fraudulent as follows:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Iowa Public Service Co. v. Medicine Bow Coal Co., 556 F.2d 400, 406 (8th Cir.1977) (emphasis added). However, if there is a "colorable"cause of action-that is, if the state law might impose liability on the resident defendant under the facts alleged-then there is no fraudulent joinder. See Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc., 92 F.Supp.2d 891, 903 (N.D.Iowa 2000).

Id.

Upon "determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved ... [a] district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor."  Filla, 336 F.3d at 811 (citing Fields v. Pool Offshore, Inc., 182 F.3d 353, 357 (5th Cir.1999)).

7.    Under Missouri law to state a claim for medical malpractice a plaintiff must allege as follow:

> To make a prima facia case for medical malpractice, "plaintiffs must prove that defendants failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendants' profession and that their negligent act or acts caused plaintiffs' injury." Washington by Washington v. Barnes Hosp., 897 S.W.2d 611, 615 (Mo. banc 1995). Whether an issue has been sufficiently proven at trial to be submitted to the jury "is a legal question and not an exercise of

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

judicial discretion." <u>Deckard v. O'Reilly Automotive, Inc.</u>, 31 S.W.3d 6, 18 (Mo.App. W.D.2000) (overruled in part on other grounds). In order for a claim to be properly submitted to the jury "each fact essential to liability" must be "predicated upon legal and substantial evidence." <u>Id</u>. at 18.

When considering whether a submissible case has been made all the evidence is to be construed in the light most favorable to the plaintiff. <u>Hiers v. Lemley</u>, 834 S.W.2d 729, 732 (Mo. banc 1992); <u>Ladish v. Gordon</u>, 879 S.W.2d 623, 627-628 (Mo.App. W.D.1994). Appellate courts are to give the "plaintiff the benefit of all favorable evidence and reasonable inferences" drawn therefrom, to the exclusion of all contrary evidence. <u>Ladish</u>, 879 S.W.2d at 627-628.

<u>Banther v. Drew</u>, 171 S.W.3d 119, 122 (2005). <u>See</u> <u>also</u> <u>Montgomery v. South County Radiologists, Inc.</u>, 168 S.W.3d 685, 691 (Mo. Ct. App. 2005) ("In order to prove medical malpractice the three elements a plaintiff must establish are: 1) an act or omission of the defendant failed to meet the required standard of care; 2) the defendant was negligent in the performance of the act or omission; and 3) the act or omission caused the plaintiff's injury.") (citing <u>Echard v. Barnes-Jewish Hosp.</u>, 98 S.W.3d 558, 565 (Mo. App. E.D. 2002)).

8.    Mo. Rev. Stat. 538.225 states:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. As used in this section, the term "legally qualified health care provider" shall mean a health care provider licensed in this state or any other state in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant.

3. The affidavit shall state the name, address, and qualifications of such health care providers to offer such opinion.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

4. A separate affidavit shall be filed for each defendant named in the petition.

5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

In Budding v. SSM Healthcare Systems, 19 S.W.3d 678, 780 (Mo. 2000), the court noted that "the legislature intended to impose specific limitations on the traditional tort causes of action available against a health care provider" and among these limitations is "the requirement that the cause of action be dependent upon an affidavit by a 'legally qualified health care provider' of failure to exercise reasonable care attributable to the defendant health care provider." In the event a proper affidavit is not filed the court may dismiss the action against a health care provider. Mello v. Giliberto, 73 S.W.3d 669, 679 (Mo. Ct. App. 2002); Fields v. Curators of the University of Missouri, 848 S.W.2d 589, 591 (Mo. Ct. App. 1993).

9.      In regard to the joining of tortfeasors guilty of negligence and of medical malpractice, Missouri courts hold:

> A party who commits an act of negligence is liable for all damages caused by the act of negligence, including later medical malpractice damages caused by a second party. See State ex rel. Bitting v. Adolf, 704 S.W.2d 671, 672-73 (Mo.banc 1986) (holding that joint liability of a tort-feasor and the doctors who negligently treated a plaintiff for the injuries sustained in the original accident justified joinder and venue). The second party is liable only for that portion of the total damages which is caused by their malpractice. Id. at 673. The two separate parties may be jointly and severally liable for a portion of the damages suffered by the plaintiff. Id

Montgomery, 168 S.W.3d at 690.

## DISCUSSION

1.      Were the court to conclude that the Hospital Defendants are fraudulently joined the court would have jurisdiction over this matter as complete diversity among named Defendants would exist.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

See Iowa Pub. Serv, 556 F.2d at 403-404. The Hospital Defendants are fraudulently joined if there is no reasonable basis in fact and law to support Plaintiffs' claims against the Hospital Defendants. See BP Chemicals, 285 F.3d at 685.

2. In addition to the above described factually specific medical malpractice allegations of Plaintiffs' Complaint Plaintiffs allege that the Hospital Defendants failed to use or possess the requisite degree of professional skill and care; that the Hospital Defendants were negligent in regard to their above described acts and omissions; and that these acts and omissions caused D.W.'s injuries. As such, Plaintiffs have sufficiently alleged, according to the requirements of Missouri law, the elements of medical malpractice against the Hospital Defendants. See Banther, 171 S.W.3d at 122; Montgomery, 168 S.W.3d at 690.

3. Pursuant to Mo. Rev. Stat. § 538.225 Plaintiffs provided affidavits in support of their Complaint which affidavits are signed by Plaintiffs' attorney and which state that he has obtained a written opinion from a physician that the care and treatment which D.W. received by each of the Defendant Hospitals deviated from the standard of care and that D.W. suffered hepatotoxicity, fulminant hepatic failure, and the ultimate need for a liver transplant as a direct result of such negligence. While these affidavits do not strictly comply with the requirements of § 538.225(2) that the affidavit state the *name*, *address*, and *qualifications* of the health care provider offering an opinion, such failure does not deprive the State court of its subject matter jurisdiction. See Burns v. Elk River Ambulance, Inc., 55 S.W.3d 466, 473-74 (Mo. Ct. App. 2001) (holding that the court had subject matter jurisdiction over a medical malpractice where the petition stated "a claim belonging to the general class of cases over which the court's authority extend[ed]"and that nothing in the applicable statute states that a "timely filed affidavit is a 'condition precedent' to the court['s]

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

acquiring subject matter jurisdiction over Plaintiff's case nor does the statute suggest that somehow the court loses jurisdiction in the absence of a timely filed affidavit"). The court further notes that § 538.225(5) states that a plaintiff alleging medical malpractice shall file a supporting affidavit "no later than ninety days after the filing of the petition in the court." Plaintiffs filed their Complaint on August 16, 2005, and McNeil filed the Notice of Removal on October 7, 2005, which is less than ninety days after the filing of the Complaint. As such, the court finds that Plaintiffs have stated a cause of action pursuant to Missouri law sufficient to maintain medical malpractice claims against the Hospital Defendants.

4.      Additionally, according to Missouri law, to the extent McNeil and/or Walgreen may be liable to Plaintiffs for their alleged negligence and to the extent that the Hospital Defendants treated D.W. for injuries he suffered as result of McNeil and/or Walgreen's alleged negligence, all defendants named in the matter under consideration may be properly joined in a single lawsuit under Missouri law. See Montgomery, 168 S.W.3d at 690. While the Hospital Defendants may be found liable only for that portion of Plaintiffs' total damages which were caused by their malpractice, the Hospital Defendants may be jointly and severally liable with McNeil and/or Walgreen for a portion of the damages suffered by Plaintiffs. See id.

5.      For the reasons more fully set forth above the court finds that the Hospital Defendants are not fraudulently joined in this matter; that these Defendants are properly named in this matter; that this court does not have jurisdiction over Plaintiffs' Complaint as complete diversity does not exist among Defendants; and that, therefore, this matter should be remanded to the State court. See Banther, 171 S.W.3d at 122; Montgomery, 168 S.W.3d at 690.

      Accordingly,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand is **GRANTED**; [Doc. 16]

**IT IS FURTHER ORDERED** that the court defers to the State court ruling on Defendant Walgreen's Motion to Dismiss Counts II, VI, and VIII; [Doc. 11]

**IT IS FURTHER ORDERED** that the Clerk of this Court shall take all appropriate administrative action to remand this case to Missouri Circuit Court, Twenty-Second Judicial Circuit, the City of St. Louis.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of November, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com